**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT MARQUETTE, an individual, | CASE NO. 13cv2719-WQH-JMA |
| Plaintiff, | ORDER |
| vs. | |
| BANK OF AMERICA, N.A, f/k/a Countrywide Home Loans, Inc., an entity of unknown form; FEDERAL HOME LOAN MORTGAGE CORPORATION S/A-3 DAY ARC-125949, an entity of unknown form; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1-10, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint filed by all Defendants. (ECF No. 21).

**I.     Background**

On November 12, 2013, Plaintiff Scott Marquette commenced this action by filing a Complaint in this Court. (ECF No. 1). On March 3, 2014, Defendants Bank of America, N.A. ("Bank of America"), Federal Home Loan Mortgage Corporation S/A-3 day ARC-125949 ("Freddie Mac"), and Mortgage Electronic Registration Systems, Inc. ("MERS") filed a motion to dismiss the Complaint. (ECF No. 9). On July 30, 2014, the Court issued an Order dismissing the Complaint without prejudice. (ECF No. 13).

On October 3, 2014, Plaintiff filed the First Amended Complaint ("FAC"), which is the operative pleading. (ECF No. 20). On October 17, 2014, Defendants filed the

Motion to Dismiss Plaintiff's First Amended Complaint, accompanied by a Request for Judicial Notice. (ECF No. 21). On November 10, 2014, Plaintiff filed an opposition. (ECF No. 22). On November 17, 2014, Defendants filed a reply. (ECF No. 24).

## II.     Allegations of the FAC

On May 24, 2007, Plaintiff entered into two "consumer credit transactions" to "refinance his principal dwelling/residence located at 2625 Pirineos Way, #228, Carlsbad, California 92009, by signing two promissory notes payable to Mortgage Investors Group, the originating lender." (ECF No. 20 at 6). The first promissory note in the amount of $324,000.00 was secured by a first deed of trust against Plaintiff's residence (the "First Loan"). The second promissory note in the amount of $72,000.00 was secured by a second deed of trust against Plaintiff's residence (the "Second Loan"). The funds from the transactions were used to pay off the existing mortgages secured by Plaintiff's residence, "which were originated by a different creditor, First Franklin Home Loans, and not Mortgage Investors Group." *Id.* at 7. "The Transactions did not involve new advances, nor did the Transactions involve new credit being given by First Franklin Home Loans, the creditor for the existing prior mortgages." *Id.* "The Transactions were subject to a finance charge and were payable by written agreement in more than four installments." *Id.*

"On May 24, 2007, Plaintiff met with a notary public and a mortgage broker at the mortgage broker's office in Encinitas, California." *Id.* at 8. The mortgage broker had Plaintiff sign numerous documents related to the loan transactions at issue. All documents signed by Plaintiff were taken by the mortgage broker, and the mortgage broker then handed Plaintiff another packet of documents and told Plaintiff that the packet contained copies of the documents that Plaintiff had just signed.

> The packet of documents handed to Plaintiff and represented by the mortgage broker to be copies of the documents that Plaintiff had just signed were not exact copies of the documents that Plaintiff had signed, and instead, contained three copies of the Notice of Right To Cancel for each loan with incorrect dates and blank lines for the date of expiration of the right to cancel. All copies of the Notices of Right To Cancel received by Plaintiff contained an incorrect date for the "date of the transaction", i.e., May 23, 2007, and did not contain the date of expiration of the right

1  to cancel, i.e., the space was left blank.

2  *Id.* at 8-9.

3      Shortly after Plaintiff consummated the transactions, servicing for both the First

4  Loan and Second Loan was transferred to Countrywide Home Loans, Inc., which later

5  became known as Bank of America.  In 2010, Bank of America identified Freddie Mac

6  as the assignee/owner of the First Loan.   Bank of America never identified the

7  assignee/owner of the Second Loan.

8      On March 28, 2009, Plaintiff mailed a Rescission Notice pursuant to 15 U.S.C.

9  § 1635 and a Qualified Written Request pursuant to 12 U.S.C. §2605 to Countrywide

10  Home Loans, Inc. and Mortgage Investors Group.  Bank of America has failed to

11  respond to the Rescission Notice and Qualified Written Request in the manner required

12  by law.

13      "The Rescission Notice received by defendant BofA provided that Plaintiff

14  disputed the debts, was represented by an attorney and all communications regarding

15  the debts were to be directed to Plaintiff's attorney."  *Id.* at 10.  "From after March 28,

16  2009 through early 2013, despite knowing that Plaintiff was represented by counsel,

17  defendant BofA attempted to communicate and communicated with Plaintiff on

18  numerous occasions in an attempt to collect the disputed debts."  *Id.*  "From March 28,

19  2009 through present, defendant BofA has attempted on numerous occasions to collect

20  fees and charges that are not lawfully permitted to be added to the alleged debt."  *Id.*

21  at 10-11.  In early 2013, defendant BofA, through its representative/employee came to

22  Plaintiff's residence when Plaintiff was not present and communicated information

23  about the disputed debt to Plaintiff's roommate."  *Id*. at 11.

24      On March 11, 2010, Plaintiff and Defendants entered into a written tolling

25  agreement  to allow time for the parties to explore settlement options and negotiations.

26  On July 23, 2012, Plaintiff received notice from Bank of America that the Second Loan

27  was forgiven "as a result of the Department of Justice and State Attorneys General

28  global settlement with major mortgage services, including Bank of America, N.A."  *Id*.

at 13.   On October 8, 2013, Bank of America and Freddie Mac gave notice of termination of the Tolling Agreement as of November 13, 2013.   Plaintiff filed the Complaint on November 12, 2013, prior to the expiration of the Tolling Agreement.

As a result of Defendants' failures to act in compliance with TILA, RESPA, and the California Rosenthal Act, Plaintiff has suffered emotional distress and has "spent at least 20 hours of time compiling information and completing at least 12 separate Loan Modification Applications" for Bank of America.   *Id.* at 15.

The FAC asserts three claims: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, against Freddie Mac and MERS; (2) violation of the California Rosenthal Act ("RFDCPA"), Cal Civ. Code §§ 1788, *et seq.*, against Bank of America; and (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, against Bank of America.   The FAC requests declaratory relief, injunctive relief, and rescission on the TILA claim, and statutory damages, actual damages, attorneys' fees, and costs on all claims.

## III.    12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.   *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## IV.    Discussion

### A.    TILA

The FAC alleges two counts in support of Plaintiff's first claim for violation of TILA against Freddie Mac and MERS. Count one alleges that the First Loan was subject to Plaintiff's right of rescission, as described by 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23. Count one alleges that Plaintiff did not receive all required material disclosures, which gave Plaintiff a continuing right to rescind the First Loan for up to three years after consummation of the transaction. Count one further alleges that Plaintiff timely exercised his option to rescind the First Loan on March 28, 2009. Count two of the TILA claim seeks damages for Freddie Mac's and MERS' alleged failure to comply with TILA's rescission provisions in response to Plaintiff's March 28, 2009 rescission notice.

Defendants contend that Plaintiff's TILA claim must be dismissed because the claim is insufficiently pled for the following reasons: rescission is not available for residential mortgage transactions or refinancing transactions; Plaintiff fails to allege credible tender; and Plaintiff has waived its right to rescission. Defendants also contend

that Plaintiff has failed to sufficiently allege any TILA violation because Plaintiff's allegations remain vague and conclusory and "fails as to Defendants Freddie Mac and MERS because he still does not allege any facts showing they had any involvement in the origination of Plaintiff's First Loan." (ECF No. 21-1 at 17). Defendants contend that Plaintiff's damages allegations are conclusory and that Plaintiff must plead detrimental reliance. Defendants request that Plaintiff's TILA claim be dismissed with prejudice.

Plaintiff contends that the loan transactions at issue are not residential mortgage transactions or refinancing transactions that are exempt from TILA's requirements. Plaintiff contends that it need not allege credible tender, citing *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1029-33 (9th Cir. 2014), and that he has alleged credible tender by offering to sell the subject property to tender the proceeds. Plaintiff contends that Defendant relies on inapplicable state law in contending that Plaintiff has waived his right to rescission. Plaintiff contends that the FAC and the loan documents that Defendant seeks judicial notice of demonstrate that MERS was involved in the original loan transaction and that Freddie Mac can be liable as an "assignee." (ECF No. 22 at 24). Plaintiff contends that he need not plead detrimental reliance for seeking damages solely based on Defendants' failure to respond to or honor Plaintiff's rescission notice.

### i.   Rescission of Residential Mortgages and Mortgage Refinancing Transactions under TILA

Defendants contend that Plaintiff is not entitled to rescission under TILA because the First Loan is a "residential mortgage transaction," as defined by 15 U.S.C. section 1602(x), which is excluded from the right of rescission under section 1635(e). (ECF No. 21-1 at 12-13). Defendants contend that Plaintiff is not entitled to rescission under TILA because the First Loan is a "refinance transaction," which is also excluded from the right of rescission under section 1635(e). Plaintiff contends that the First Loan is not a "residential mortgage transaction" because it was not made to "purchase or acquire" Plaintiff's residence. (ECF No. 22 at 19). Plaintiff contends that the First

Loan is a refinance transaction "by a new creditor" and therefore not excluded by section 1635(e). *Id.*

15 U.S.C. section 1635(a) provides, in relevant part:

> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction....

15 U.S.C. § 1635(a). Regulation Z similarly provides that "[i]n a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section." 12 C.F.R. § 226.23(a)(1). Certain transactions are excluded from the right to rescission, including: "[a] residential mortgage transaction as defined in section 1602(w) ... [and] a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property..."[1] 15 U.S.C. § 1635(e); *see also* 12 C.F.R. § 226.23(f) ("The right to rescind does not apply to ... [a] residential mortgage transaction ... [or] [a] refinancing ... by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation"). Section 1602(x) defines "residential mortgage transaction" as a "transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's

---

[1] 15 U.S.C. section 1602(w), referred to in 15 U.S.C. section 1635(e)(1), was redesignated section 1602(x) of this title by Pub.L. 111-203, Title X, § 1100A(1)(A), July 21, 2010, 124 Stat. 2107.

dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x).

The FAC alleges that the "funds from the Transactions were used to pay off the existing prior mortgages secured by Plaintiff's primary residence/dwelling, which were originated by a different creditor, First Franklin Home Loans, and not Mortgage Investors Group." (ECF No. 20 at 7).  The Court finds that the allegations of the FAC do not show that the loan transactions at issue are "residential mortgage transactions," as defined in 15 U.S.C. section 1602(x), which are excluded from rescission by section 1635(e)(1).  The facts alleged do not show that the loans were to "finance the acquisition or initial construction" of Plaintiff's dwelling.  15 U.S.C. § 1602(x).  The Court further finds that the allegations of the FAC do not show that the loan transactions at issue are excluded from rescission by section 1635(e)(2) because the FAC alleges that the loan transactions were "originated by a different creditor," not "the same creditor." (ECF No. 20 at 7); 15 U.S.C. § 1605(e)(2); *see also Harris v. OSI Fin. Servs., Inc.*, 595 F. Supp. 2d 885, 889-90 (N.D. Ill. 2009) ("[The] right to rescind the entire amount of the loan applies even in a case where the borrower is seeking a loan to refinance an existing loan from a different prior creditor.").  The Court concludes that the allegations of the FAC show that the loans at issue do not fall within the transactions excluded from the right to rescission pursuant to 15 U.S.C. section 1635(e). Defendants' motion to dismiss Plaintiff's TILA claim on the ground that the loans at issue are not covered by TILA is denied.

### ii. Damages

Count two of the TILA claim seeks damages for Freddie Mac's and MERS' alleged failure to comply with TILA's rescission provisions in response to Plaintiff's March 28, 2009 rescission notice.  The FAC alleges that "[o]n or about March 28, 2009, pursuant to 12 CFR 226.23, Plaintiff exercised his right to rescind the First Loan Transaction." (ECF No. 20 at 19).  The FAC further alleges that "Defendants Freddie Mac and MERS failed to properly respond to Plaintiff's rescission notice and failed to

comply with the rescission provisions of 12 CFR 226.23." *Id.*

Defendants contend that Plaintiff's damages allegations are conclusory and that Plaintiff must plead detrimental reliance. Defendants cite to *In re Smith*, 289 F.3d 1155 (9th Cir. 2002) for the proposition that a plaintiff must plead and prove detrimental reliance to recover damages under TILA. Plaintiff contends that it need not plead detrimental reliance for seeking damages solely based on Defendants' failure to respond to or honor Plaintiff's rescission notice. Plaintiff cites to *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 887 (9th Cir. 2011) for the proposition that detrimental reliance in TILA cases need only be shown where the claim is based on misrepresentations or inadequate or missing disclosures.

15 U.S.C. section 1640(a) provides, in relevant part, that "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title ... is liable to such person in an amount equal to the sum of ... any actual damage sustained by such person as a result of the failure ... [and] in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000...." 15 U.S.C. § 1640(a). In *In re Smith*, a bankruptcy court awarded the debtor statutory damages for a violation of 15 U.S.C. section 1638(a)(3) & (4) for failing to "conspicuously disclose and define the 'finance charge' and 'annual percentage rate'" in mortgage loan documents. 289 F.3d at 1156. The bankruptcy court found that the debtor was not entitled to actual damages because "she failed to show ... any actual damages under 15 U.S.C. § 1640(a)(1)." *Id.* at 1157. The Ninth Circuit Court of Appeals affirmed, reasoning that "[w]e join other circuits and hold that in order to receive actual damages for a TILA violation, *i.e.*, 'an amount awarded to a complainant to compensate for *proven* injury or loss,' [citation.], a borrower must establish detrimental reliance." *Id.* (citing Black's Law Dictionary 394 (7th ed. 1999)).

In *Lyon*, the defendant admitted to violating 15 U.S.C. section 1666(a) by "failing to provide a written explanation in response to [the plaintiff's] billing dispute" and by

"attempting to collect the disputed charge and reporting it as delinquent to credit agencies." 656 F.3d at 885. The defendant nevertheless contended that "evidence of detrimental reliance" was required for the plaintiff to recover "actual damages" under 15 U.S.C. section 1640(a). The Ninth Circuit Court of Appeals rejected that contention, reasoning that in the case of a violation of section 1666(a), "[t]here is simply no relevant disclosure or conduct under these circumstances that [the plaintiff] could have relied upon." *Id.* at 887. "If [the defendant's] argument were to be followed in cases of defiant refusal to comply with § 1666(a)(3)(B), [the defendant] has discovered that silence is truly golden." *Id.* "To require evidence of detrimental reliance on an unmade explanation would necessarily bar recovery of actual damages because such evidence could never exist." *Id.* at 887-88.

In this case, Plaintiff requests statutory damages in addition to actual damages in count two of Plaintiff's TILA claim. *See* 15 U.S.C. § 1640(a) (providing for both actual damages and statutory damages for violations of section 1635); *see also Stephenson v. Chase Home Fin. LLC*, No. 10cv2639, 2011 WL 2006117, at *3, *5 (S.D. Cal. May 23, 2011) (finding that the failure to adequately allege actual damages for violations of 15 U.S.C. sections 1641(f)(2) and 1635 is "an insufficient ground for dismissal" because "Plaintiffs are entitled to statutory damages pursuant to 15 U.S.C. Section 1640(a)(2)(A)(iv)"). The Court need not resolve whether Plaintiff must plead or prove "detrimental reliance" to seek actual damages pursuant to 15 U.S.C. section 1640(a) for an alleged violation of 15 U.S.C. section 1635 or determine whether Plaintiff's allegations of actual damages are too conclusory. Defendants' motion to dismiss count two of Plaintiff's TILA claim is denied.

### iii.  Tender

Defendants contend that Plaintiff's TILA claim must be dismissed because Plaintiff must allege a credible tender. (ECF No. 21-1 at 15) (citing *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003)). Defendants contend that Plaintiff's offer to sell the subject property is "speculation and conditioned on Plaintiff selling the

Property at the amount of least $324,000.00 which represents the amount of the First Loan secured by Plaintiff."  (ECF No. 21-1 at 16).  Plaintiff contends that it is not required to tender, citing *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1029-1022 (9th Cir. 2014).  Plaintiff contends that his allegation offering to sell the home is sufficient.

"[P]laintiffs can state a claim for rescission under TILA without pleading that they have tendered, or that they have the ability to tender, the value of their loan.  Only at the summary judgment stage may a court order the statutory sequence altered and require tender before rescission—and then only on a 'case-by-case basis,' ... once the creditor has established a potentially viable defense."  *Merritt*, 759 F.3d at 1033.  Defendants' motion to dismiss Plaintiff's TILA claim on the ground that it fails to allege credible tender is denied.

### iv.  Sufficiency of TILA Violations

Defendants contend that Plaintiff's allegations of Defendant Freddie Mac and MERS's TILA violations are "conclusory" and "hardly 'specific.'" (ECF No. 21-1 at 16).  Defendants contend that Plaintiff "does not allege facts showing that [Defendants Freddie Mac and MERS] had any involvement in the origination of Plaintiff's First Loan." *Id.* at 17.  Plaintiff contends that he has sufficiently alleged a TILA violation because he was provided with Notice of the Right to Cancel forms which omitted the expiration date of his right to rescind.  Plaintiff contends that Defendant MERS was involved in the original loan transactions as confirmed by the original deed of trust, which is submitted in Defendants' Request for Judicial Notice.  Plaintiff contends that Defendant Freddie Mac can be liable as an assignee.

"TILA and Reg[ulation] Z contain detailed disclosure requirements for consumer loans.  A lender's violation of TILA allows the borrower to rescind a consumer loan secured by the borrower's primary dwelling." *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703 (9th Cir. 1986) (citing 15 U.S.C. § 1635(a)).  "Reg Z makes clear that failure to fill in the expiration date of the rescission form is a violation of the

TILA." *Id.* (quotation omitted).  The omission of the expiration date, "though a purely technical violation of TILA," entitles the consumer "to rescind the loan agreement for up to three years, without regard to whether the omission was material." *Id.* (citations omitted).  15 U.S.C. section 1635(b) provides that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b).  15 U.S.C. section 1641(a) provides for liability of assignees of creditors as follows:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a).

The FAC alleges that "[i]n 2010, defendant BofA identified defendant Freddie Mac as the assignee/owner of the First Loan."  (ECF No. 20 at 9).   The FAC alleges that Defendant MERS is a creditor or an assignee of the loan documents at issue.  The FAC alleges that on May 24, 2007, when Plaintiff was signing the documents for the loans at issue, a mortgage broker provided Plaintiff with "three copies of the Notice of Right to Cancel for each loan with incorrect dates and blank lines for the date of expiration of the right to cancel." *Id.* at 8.  The FAC alleges that on March 28, 2009, Plaintiff mailed a Notice of Rescission to Countrywide Home Loans, Inc. and Mortgage Investors Group.  The FAC alleges that Defendants Freddie Mac and MERS "have failed and refused, and continue to fail and refuse, to properly respond to the rescission notice by performing the acts required by 15 U.S.C. § 1635(b)." *Id.* at 10.  The FAC alleges that "Defendants have failed to take any action necessary or appropriate to

reflect the termination of any security interest created under the First Loan Transaction, including the termination of the deed of trust recorded against Plaintiffs' Residence, as required by 15 U.S.C. § 1635(b) and Reg Z § 226.23(d)(2)." *Id.* at 17.

The Court finds that the FAC plausibly alleges a right to rescission by alleging that the expiration date was omitted from the Notice of Right To Cancel provided by the mortgage broker. *Semar*, 791 F.2d at 703. The Court finds that the FAC plausibly alleges a violation of section 1635(b) by alleging that Defendants Freddie Mac and MERS, as assignees of the First Loan, have failed to take action necessary to terminate the security interest created by the First Loan Transaction.[2] *See* 15 U.S.C. § 1641(a). Construing the allegations of the FAC in a light most favorable to the plaintiff, the Court concludes that the FAC states a plausible claim for violation of TILA.

Defendants' motion to dismiss Plaintiff's first claim for violation of TILA on the ground that Plaintiff has failed to adequately allege a TILA violation against Defendants Freddie Mac and MERS is denied.

### v. Waiver of Rescission Right

Defendants contend that Plaintiff has waived his right to rescind because he concedes he received the proceeds from the loans at issue and has been living on the property ever since. Defendants cite *Gill v. Rich*, 128 Cal. App. 4th 1254, 1264 (2005) and California Civil Code sections 3515 and 3521 in support of this contention. Plaintiff contends that the state law waiver doctrine that Defendants rely upon is inapplicable to TILA claims for rescission.

12 C.F.R. section 226.23, the Regulation Z provision governing the right of rescission, provides that a "consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency." 12 C.F.R. § 226.23(e)(1). This provision provides no other circumstances in which a consumer may waive the right to rescind. Defendants cite no

---

[2] Defendants have cited no authority for the proposition that Defendants Freddie Mac and MERS must be involved in origination to be liable for failing to terminate security interests created under the First Loan transaction.

TILA authority for the proposition that a consumer may waive the right to rescission by receiving the benefit of a loan. Defendants' motion to dismiss Plaintiff's TILA claim on waiver grounds is denied.

### vi. Conclusion

Defendants' motion to dismiss Plaintiff's first claim for violation of TILA is denied.

### B. RESPA

Plaintiff's third claim alleges that Defendant Bank of America violated five RESPA provisions after Plaintiff sent Defendant Bank of America a Qualified Written Request. Plaintiff alleges that he suffered emotional distress and lost time as a result of Defendant Bank of America's alleged RESPA violations.

### i. Alleged RESPA Violations

Plaintiff alleges that Defendant Bank of America has violated RESPA in five regards: (1) failing to provide a written response acknowledging receipt of the Qualified Written Request, in violation of 12 U.S.C. section 2605(e)(1)(A); (2) failing to provide Plaintiff with a written explanation or clarification as to why Defendant Bank of America believed Plaintiff's account was correct, along with contact information for a Bank of America representative that could provide Plaintiff with assistance, in violation of 12 U.S.C. section 2605(e)(2)(A); (3) failing to provide Plaintiff with a written explanation or clarification of information requested by Plaintiff, or an explanation of why that information was unavailable, along with contact information with someone to assist Plaintiff, in violation of 12 U.S.C. section 2605(e)(2)(C); (4) refusing to cease its collection efforts after receiving Plaintiff's Qualified Written Request, in violation of 12 U.S.C. section 2605(e)(2); and (5) providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were related to his Qualified Written Request, in violation of 12 U.S.C. section 2605(e)(3).

Defendant Bank of America contends that Plaintiff's allegations of Defendant Bank of America failing to respond to Plaintiff's Qualified Written Request are "vague

and conclusory" and are "insufficient to adequately plead a cause of action for violation of RESPA." (ECF No. 21-1 at 21). Defendant Bank of America contends that Plaintiff has failed to allege sufficient facts showing that his Qualified Written Request complied with RESPA. Plaintiff contends that the FAC sufficiently identifies four RESPA violations.

"[A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that ... includes, or otherwise enables the servicer to identify, the name and account of the borrower; and ... includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1). "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days ... unless the action requested is taken within such period."[3] 12 U.S.C. § 2605(e)(1)(A).

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall ... (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower) ... [or] (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes ... information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and ... the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."

---

[3] A provision of the Dodd-Frank Act recently shortened the applicable period to five days, which took effect on January 10, 2014. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013). The Dodd-Frank Act amended other portions of section 2605. The Dodd-Frank Act is not retroactive. *McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 554 n. 2 (4th Cir. 2013). Because the RESPA violations alleged in the FAC occurred prior to January 10, 2014, the Court cites to and applies the version of section 2605 immediately preceding the Dodd-Frank Act amendments.

12 U.S.C. § 2605(e)(2)(A), (C).[4]  "During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15)."  12 U.S.C. § 2605(e)(3).  If a loan servicer fails to comply with the provisions of 12 U.S.C. § 2605, a borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605], in an amount not to exceed $1,000."[5]  12 U.S.C. § 2605(f)(1).

The FAC alleges that on March 28, 2009, Plaintiff sent Countrywide Home Loans, Inc. (now Bank of America) and Mortgage Investors Group a Qualified Written Request.  The Qualified Written Request is attached as Exhibit D to the FAC, which states, in relevant part:

> [P]ursuant to 15 U.S.C. § 1641(f)(2) and 12 U.S.C. § 2605, A QUALIFIED WRITTEN REQUEST is hereby made for the name, address, and telephone number of the master servicer, all current mortgage holders, all current note/loan holders, and all current owners of the loan described above.  Furthermore, A QUALIFIED WRITTEN REQUEST is made for all signed and/or unsigned copies of the following documents, if they exist, relating to the above referenced loan:
>
> 1. All Notices of Right to Cancel;
> 2. HUD-1 Disclosures;
> 3. Truth in Lending Act Disclosures;
> 4. The Entire Note(s);
> 5. Deeds of Trust;
> 6. All riders to any of the above documents;
> 7. A History of Payments and other document showing the loan disbursements, loan charges, payments made, and current principal balance due;
> 8. The Entire Loan Origination File(s); and
> 9. All correspondence relating to the Loan(s).

(ECF No. 20 at 45-46).  The FAC alleges that Defendant Bank of America did not

---

[4]  Effective January 10, 2014, the applicable period is thirty days.

[5]  Effective January 10, 2014, the statutory maximum is increased to $2,000.

provide Plaintiff with written correspondence acknowledging receipt of the Qualified Written Request within twenty days of receipt.  The FAC alleges that Defendant did not "provide Plaintiff with a written explanation or clarification that included a statement of the reasons for which BofA believed the account was correct as determined by BofA and provide the name and telephone number of an individual or department that could provide assistance to Plaintiff" or "provide Plaintiff with a written explanation or clarification that included information requested by Plaintiff or an explanation of why the information requested was unavailable or could not be obtained by BofA and the name and telephone number of an individual or department that could provide Plaintiff with assistance."  *Id.* at 11-12.  The FAC alleges that, "[d]uring the 60 day period beginning on the date that BofA received Plaintiff's Rescission Notice/QWR, Plaintiff is informed and believed and thereon alleges that BofA provided information regarding overdue payments, allegedly owed by Plaintiff and relating to Plaintiff's Rescission Notice/QWR, to a consumer reporting agency."  *Id.* at 12.

The allegations of the FAC and Exhibit D to the FAC plausibly show that Plaintiff sent a Qualified Written Request to Countrywide Home Loans, Inc. on March 28, 2009 that "provides sufficient detail to the servicer regarding other information sought by the borrower" by requesting specific documents.   12 U.S.C. § 2605(e)(1). By alleging that Defendant Bank of America did not respond to the Qualified Written Request within twenty days of receipt, the FAC alleges sufficient facts to plausibly support the conclusion that Defendant Bank of America violated 12 U.S.C. section 2605(e)(1)(A).  Construing the allegations of the FAC in a light most favorable to the plaintiff, the Court concludes that Plaintiff has stated a claim for violating 12 U.S.C. section 2605(e)(1)(A).

By alleging that Defendant Bank of America did not provide the information requested or otherwise respond to Plaintiff's request within 60 days, the FAC alleges sufficient facts to make plausible the conclusion that Defendant Bank of America violated section 2605(e)(2)(C).  The Court concludes that Plaintiff has stated a plausible

claim for violating 12 U.S.C. section 2605(e)(2)(C).

The FAC fails to allege sufficient facts to support the conclusion that Defendant violated section 2605(e)(2)(A) by failing to "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction."   12 U.S.C. § 2605(e)(2)(A).  The Qualified Written Request does not state that "the account is in error," and the FAC does not allege facts plausibly suggesting that Defendant Bank of America was nevertheless required to "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction."   12 U.S.C. §§ 2605(e)(1), (e)(2)(A).  The Court concludes that Plaintiff has failed to allege sufficient facts to support a claim for violation of 12 U.S.C. section 2605(e)(2)(A).

The Court finds that the conclusory allegation that Plaintiff believes Defendant Bank of America provided information regarding overdue payments to a consumer reporting agency is insufficient to plausibly give rise to the inference that Defendant Bank of America violated 12 U.S.C. section 2605(e)(3).  The Court further finds that the allegation that Defendant violated 12 U.S.C. section 2605(e)(2) "by refusing to cease its collection efforts after receiving Plaintiff's qualified written request" does not state a claim that is plausible on its face.  *See Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1133-34 (D. Haw. 2012) ("As an initial matter, § 2605(e) on its face includes no requirement that a servicer cease collection efforts.  Rather, after receiving the QWR, within sixty days, the loan servicer must either (1) make appropriate corrections to the borrower's account and notify the borrower of the correction in writing, 12 U.S.C. § 2605(e)(2)(A), (2) provide the borrower with a written explanation or clarification stating the reasons why the servicer believes the borrower's account is correct, id. § 2605(e)(2)(B), or (3) provide the information to the borrower or explain why such information is unavailable. *Id.* § 2605(e)(2)(C). Second, even if Plaintiff could state a claim for failure to cease collection efforts, Plaintiff provides no facts

suggesting that BANA did indeed continue collection efforts during the 60–day period—the SAC does not allege what collection efforts BANA took and when they occurred."). The Court concludes that Plaintiff has failed to plausibly allege a violation of 12 U.S.C. section 2605(e)(3) or a violation of 12 U.S.C. section 2605(e)(2) to the extent it is premised on Defendants' refusal to cease collection efforts.

Defendants' motion to dismiss Plaintiff's third claim for RESPA violations is denied as to alleged violations of 12 U.S.C. section 2605, subsections (e)(1)(A) and (e)(2)(C). Defendants' motion to dismiss Plaintiff's third claim for RESPA violations is granted as to the alleged violations of 12 U.S.C. section 2605, subsections (e)(2)(A) and (e)(3), and to an alleged violation of 12 U.S.C. section 2605(e)(2) for Defendant Bank of America's alleged refusal to cease its collection activities.

### ii. Damages

Plaintiff alleges two types of damages as a result of Defendant Bank of America's RESPA violations: emotional distress and lost time. Defendant contends that Plaintiff has failed to allege facts showing that he has suffered actual and pecuniary damages. Plaintiff contends that he has sufficiently alleged "pecuniary loss in the form of emotional distress and loss of time suffered as a result of BofA's failure to provide him the information he requested." (ECF No. 22 at 29).

If a loan servicer fails to comply with the provisions of 12 U.S.C. § 2605, a borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605], in an amount not to exceed $1,000."[6] 12 U.S.C. § 2605(f)(1). "Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Molina v. Wash. Mut. Bank*, No. 09-CV-894, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual

---

[6] Effective January 10, 2014, the statutory maximum is increased to $2,000.

harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 2:09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted). "The Ninth Circuit has not decided whether emotional distress can constitute 'actual damages' for purposes of § 2605(f), and cases are split." *Obot v. Wells Fargo Bank, N.A.*, No. C11-566-HRL, 2011 WL 5243773, at *3 (N.D. Cal. Nov. 2, 2011) (collecting cases). Other Circuit Courts of Appeals that have addressed this issue have found that emotional distress damages are recoverable for RESPA violations. *See McLean v. GMAC Mortg. Corp.*, 398 Fed. App'x 467, 471 (11th Cir. 2010) ("Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA."); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (holding that the plaintiff's self-serving deposition testimony regarding his alleged emotional distress was sufficient to preclude summary judgment on a RESPA claim); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 Fed. App'x 546, 548 n.6 (6th Cir. 2012) ("We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional distress damages, provided that they are adequately proven.").

A plaintiff is only entitled to recover for the loss that relates to the RESPA violation. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA violation itself."); *Torres v. Wells Fargo Home Mortg., Inc.*, No. 10-4761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) ("The plaintiff must ... allege a causal relationship between the alleged damages and the RESPA violation.").

The FAC's allegations related to damages resulting from Defendant Bank of America's alleged RESPA violations are as follows:

Plaintiff's emotional distress escalated and was made more severe by each of BofA's noncompliant failures and refusals to provide Plaintiff with (1) the required acknowledgment (noncompliance with RESPA), (2) the requested information (noncompliance with RESPA), and (3) the required

written explanation or clarifications (noncompliance with RESPA). BofA's failure to comply with RESPA caused Plaintiff to suffer frustration because he was unable to obtain information, including payment information from BofA to make determinations about disputed amounts and what was owed; uncertainty, anger, fear, and sadness because without the information, including payment information, Plaintiff was left in a state of limbo and at an informational disadvantage, which contributed to Plaintiff submitting at least 12 Loan Modification Applications to BofA in futility. Plaintiff's emotional distress escalated further and was made even more severe by BofA's unlawful collection actions. BofA's unlawful collection practices caused Plaintiff to suffer fear, frustration, embarrassment, worry, sadness, and anger from BofA's third party communications and disclosures, unlawful increase in the amount of the debt, and continued direct communication and harassment. The emotional toll suffered by Plaintiff increased with each failure and refusal to comply and/or with each violation of law by Defendants. The emotional distress caused by Defendants' actions additionally caused Plaintiff ailments in the form of loss of concentration, depression, stomach ailments, weight gain, nausea, anxiety, insomnia, and social withdrawal.

25. After the time had passed for BofA to respond to Plaintiff's Rescission Notice/QWR, Plaintiff, who is an independent contractor/real estate agent, spent at least 20 hours of time compiling information and completing at least 12 separate Loan Modification Applications for BofA.

(ECF No. 20 at 14-15). The Court finds that the FAC has alleged sufficient facts giving rise to the plausible inference that Plaintiff has suffered emotional distress as a result of Defendant Bank of America's alleged RESPA violations. Defendants' motion to dismiss Plaintiff's third claim for violations of RESPA on the ground that the FAC fails to allege sufficient facts demonstrating Plaintiff's damages is denied.

**C. RFDCPA**

Plaintiff's second claim alleges that Defendant Bank of America violated three provisions of the RFDCPA and nine provisions of the Federal Fair Debt Collection Practices Act, which are actionable under the RFDCPA, California Civil Code section 1788.17, in relation to Defendant Bank of America's servicing of the loans at issue. Specifically, Plaintiff's second claim alleges that Defendant Bank of America: communicated with Plaintiff's roommate regarding the loans at issue, communicated with Plaintiff directly, despite knowing that Plaintiff was represented by an attorney, used deceptive methods to collect on the loans at issue, attempted to collect unlawful

amounts from Plaintiff, and communicated false credit information.

Defendant Bank of America contends that the RFDCPA is inapplicable to residential mortgage loans.  Defendant contends that Plaintiff fails to allege sufficient facts to state a RFDCPA claim in four regards.  First, Defendant contends that Plaintiff "does not plead specific factual details relating to any of the alleged communications [by Bank of America], such as when they were made, by whom they were made, and under what authority they were made."  (ECF No. 21-1 at 20).  Second, Defendant contends that Plaintiff does not identify the fees and charges that Defendant Bank of America was attempting to collect.  Third, Defendant contends that Plaintiff fails to provide any factual support for his allegation that Defendant used false representations in connection with its debt collection activity.  Finally, Defendant Bank of America contends that Plaintiff does not allege any facts demonstrating the "unfair or unconscionable means" that Defendant Bank of America used to collect the alleged debt or that Defendant Bank of America attempted to collect amounts of debt not permitted by law.  *Id.*

Plaintiff contends that Defendant's contention—that the RFDCPA is inapplicable to residential mortgage loans—is irrelevant because the loan transactions at issue are not residential mortgage loans.  Plaintiff contends that he has alleged sufficient facts to support an RFDCPA claim.  Specifically, Plaintiff contends that he has alleged that Defendant Bank of America attempted to communicate with him and his roommate regarding the alleged debt, despite the fact that Defendant Bank of America knew he was represented by counsel.

### i. Applicability of the RFDCPA to Residential Mortgage Loans

Defendant Bank of America contends that Plaintiff's RFDCPA claim must fail as a matter of law because "the RFDCPA does not apply to residential mortgage loans." (ECF No. 21-1 at 18, 20).  Defendant Bank of America contends that "the activity that

Plaintiff complains about here 'arises out of or exists in connection to' Plaintiff's residential loan mortgage, just as in" *Patacsil v. Wilshire Credit Corp.*, No. 2:09-cv-01660, 2010 WL 500466 (E.D. Cal. Feb. 8, 2010). *Id.* at 19. Plaintiff contends that Defendants contention is irrelevant because "the Loan Transactions are not "Residential Mortgage Transaction [sic]." (ECF No. 22 at 25). In reply, Defendants contend that the loans at issue are residential mortgage loans that are not covered by the RFDCPA, even if they are refinance loans.

The RFDCPA defines "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person from such person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(f). The RFDCPA defines "debt collection," in turn, as "any act or practice in connection with the collection of a 'consumer debt.'" Cal. Code Civ. Proc. § 1788.2(b). This Court has held that foreclosure activity pursuant to a deed of trust is not governed by the RFDCPA. *See Ines v. Countrywide Home Loans, Inc.*, No. 08cv1267, 2008 WL 4791863, at *3 (S.D. Cal. Nov. 3, 2008) ("The Court finds that the Complaint arises out of the allegedly unlawful foreclosure on Plaintiff's property pursuant to a deed of trust, which does not fall within the meaning of the RFDCPA or FDCPA."); *see also Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1132 (2010) ("The 'law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCPA....'") (quoting *Gamboa v. Trustee Corps*, No. 09-0007, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009). This case does not involve actions to foreclose on Plaintiff's property pursuant to a deed of trust.

Some district courts have further held that a residential mortgage loan does not fall under the RFDCPA's definition of a "consumer debt." *See Patacsil*, 2010 WL 500466, at *3 (noting that "courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA" and holding that the "sending letters, making phone calls and making reports" that "all stem from the initial residential mortgage loan ...

does not fall under the purview of the RFDCPA"); *Pittman v. Barclays Capital Real Estate, Inc.*, No. 09 CV 0241, 2009 WL 110889, at *3 (S.D. Cal. Apr. 24, 2009) ("On a more basic level, even if Plaintiff had pled relevant facts, he fails to state a claim under the Rosenthal Act because a residential mortgage loan does not qualify as a "debt" under the statute.  The Rosenthal Act protects consumers from debt collection practices for 'consumer debts,' created through transactions in which 'property, services or money is acquired on credit ... primarily for personal, family, or household purposes.'  Thus, foreclosing on a deed of trust does not invoke the statutory protections.") (citation omitted); *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (collecting cases and concluding that "[s]ince residential mortgage loans do not fall within the RFDCPA, the court must grant defendants' motion to dismiss plaintiff's" RFDCPA claim); *Pok v. Am. Home Mortg. Servicing, Inc.*, No. CIV 2:09-2385, 2010 WL 476674, at *3 (E.D. Cal. Feb. 3, 2010) (to same effect); *Fuentes v. Duetsche Bank*, 09CV502, 2009 WL 1971610, at *3 (S.D. Cal. July 8, 2009) (to same effect).

In *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), the plaintiffs alleged that they reached agreements with the loan servicer of their mortgages, which provided that they would receive permanent mortgage modifications if they complied with the requirements of their trial period plans ("TPP").  The plaintiffs alleged that they complied with their TPP and should have been offered permanent modifications. The district court dismissed the plaintiffs' RFDCPA claims on the grounds that the TPP was not false, deceptive, or misleading.  The Ninth Circuit Court of Appeals reversed, reasoning:

> Wells Fargo contends ... that it was not engaged in debt collection activities when it offered the TPP with its concomitant demand for trial payments. The district court, while dismissing the claim on other grounds, correctly recognized that Wells Fargo was engaged in debt collection. The TPP was more than an informational circulation. This is the same conclusion reached by other district courts.

*Id.* at 885 (collecting cases).

1    *Corvello* held that a mortgage loan servicer was engaged in "debt collection" in

2    connection with residential mortgage loan.  In order for Wells Fargo to have been

3    engaged in "debt collection" in connection with a residential mortgage loan, a

4    residential mortgage must qualify as a "consumer debt."   "Debt collection" is defined

5    by the RFDCPA as "any act or practice in connection with the collection of a '*consumer*

6    *debt*.'"  Cal. Code Civ. P. § 1788.2(b) (emphasis added).

7         This Court agrees with courts which have concluded that "[n]othing in the

8    statutory definition excludes a consumer debt from the Rosenthal Act merely because

9    it is secured by real or personal property."  *In re Ganas*, 513 B.R. 394, 404 (E.D. Cal.

10   2014); *see also id.* at 406 (finding that if "the Rosenthal Act did not apply to debts

11   which were secured by real property or for which foreclosure proceedings could be

12   commenced or were being prosecuted, then no legislative reason would have existed for

13   enacting California Civil Code § 2924(b)[,]" which "provides a statutory exemption

14   from the Rosenthal Act for a trustee under a deed of trust"); *Moriarity v. Nationstar*

15   *Mortg., LLC*, No. 1:13-cv-00855, 2013 WL 3354448, at *6 (E.D. Cal. July 3, 2013)

16   (noting that the RFDCPA contains a different definition of "debt" than the federal

17   FDCPA and concluding that "there is no reason to believe that mortgage debts are

18   exempted from the RFDPCA....  On its face, collection of a mortgage loan fits [The

19   RFDCPA's definition of "debt collection"].").

20        Under the facts alleged in the FAC, the Court cannot conclude that the RFDCPA

21   violations alleged in the FAC "arise[] out of the allegedly unlawful foreclosure on

22   Plaintiff's property pursuant to a deed of trust, which does not fall within the meaning

23   of the RFDCPA...."  *Ines*, 2008 WL 4791863, at *3.

24        The Court does not conclude, as a matter of law, that residential mortgage loans

25   are exempted from the RFDCPA's definition of "consumer debt" because the loan is

26   secured by real property.  *See Corvello*, 728 F.3d at 885; *In re Ganas*, 513 B.R. at 404-

27   06; *Moriarity*, 2013 WL 3354448, at *5-6.  Defendants' motion to dismiss on the

28

ground that the RFDCPA does not cover residential mortgage loans is denied.

### ii. Section 1788.12 and Section 1788.17 (by violating 15 U.S.C. section 1692c(b))

The FAC alleges that Defendant Bank of America violated section 1788.12 and 15 U.S.C. section 1692c(b) by communicating with Plaintiff's roommate regarding Plaintiff's alleged debt without Plaintiff's consent: "In early 2013, defendant BofA, through its representative/employee came to Plaintiff's residence when Plaintiff was not present and communicated information about the disputed debt to Plaintiff's roommate." (ECF No. 20 at 11, 20-21). The FAC further alleges that "BofA's unlawful collection practices caused Plaintiff to suffer fear, frustration, embarrassment, worry, sadness, and anger from BofA's third party communications and disclosures... *Id.* at 15.

Section 1788.12 prohibits "[c]ommunicating with the debtor's employer ... [c]ommunicating information regarding a consumer debt to any member of the debtor's family ... [c]ommunicating to any person any list of debtors which discloses the nature or existence of a consumer debt, commonly known as 'deadbeat lists,' or advertising any consumer debt for sale, by naming the debtor; or ... [c]ommunicating with the debtor by means of a written communication that displays or conveys any information about the consumer debt or the debtor other than the name, address and telephone number of the debtor...." Cal. Civ. Code § 1788.12(a)-(d). Section 1788.17 provides that, "[n]otwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ. Code § 1788.17. 15 U.S.C. section 1692c(b) provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not

communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

The language of section 1788.12 does not prohibit communications with a debtor's roommate. The Court finds that the FAC fails to allege any facts plausibly suggesting that Defendant Bank of America violated section 1788.12. However, the Court finds that the FAC plausibly alleges a violation of section 1788.17 (by violating 15 U.S.C. section 1692c(b)) because a roommate is "any person other than the consumer, his attorney, a consumer reporting agency, ... the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1024 (9th Cir. 2012) (reversing grant of summary judgment on a 15 U.S.C. section 1692c(b) claim, where a letter addressed to the plaintiff was sent "care of" the debtors employer, opened by other employees, and caused the plaintiff embarrassment).

### iii. Section 1788.14(b) and Section 1788.17 (by violating 15 U.S.C. section 1692f(1))

The FAC alleges that Defendant Bank of America violated section 1788.14(b) because it "attempted to collect fees and charges that were not permitted by law...." (ECF No. 20 at 20). The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692f(1) by attempting to "collect amounts not permitted by law or contract." *Id.* at 22. The FAC alleges that "[f]rom March 28, 2009 through present, defendant BofA has attempted on numerous occasions to collect fees and charges that are not lawfully permitted to be added to the alleged debts." *Id.* at 10-11.

California Civil Code section 1788.14(b) provides that "[n]o debt collector shall collect or attempt to collect a consumer debt by means of ... [c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of

the consumer debt, except as permitted by law...."  Cal. Civ. Code § 1788.14(b).  15 U.S.C. section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The Court concludes that the FAC's vague and conclusory allegations that Defendant Bank of America attempted to collect unlawful fees are not "plausibly suggestive of a claim entitling the plaintiff to relief" for violations of sections 1788.14(b) or section 1788.17 (by violating 15 U.S.C. section 1692f(1)).  *Moss*, 572 F.3d at 969.

### iv.  Section 1788.14(c) and Section 1788.17 (by violating 15 U.S.C. section 1692c(a)(2))

The FAC alleges that Defendant Bank of America violated section 1788.14(c) and 15 U.S.C. section 1692c(a)(2) because it "communicated with Plaintiff after being notified in writing that Plaintiff was represented by an attorney and all communication [was] to be directed to Plaintiff's attorney."  (ECF No. 20 at 21).  California Civil Code section 1788.14(c) provides:

> [n]o debt collector shall collect or attempt to collect a consumer debt by means of ... [i]nitiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

Cal. Civ. Code § 1788.14.  Similarly, 15 U.S.C. section 1692c(a)(2) prohibits a debt collector to communicate directly with a debtor where "the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of,

or can readily ascertain, such attorney's name and address...." 15 U.S.C. § 1692c(a)(2).

The FAC alleges that Plaintiff mailed a Rescission Notice to Countrywide Home Loans, Inc. (now Bank of America) on March 28, 2009 which stated that "Plaintiff disputed the debts, was represented by an attorney and all communications regarding the debts were to be directed to Plaintiff's attorney." (ECF No. 20 at 10).  The FAC alleges that "[f]rom after March 28, 2009 through early 2013, despite knowing that Plaintiff was represented by counsel, defendant BofA attempted to communicate and communicated with Plaintiff on numerous occasions in an attempt to collect the disputed debts." (ECF No. 20 at 10).  The Court finds that the FAC plausibly alleges a violation of sections 1788.14(c) and 1788.17 (by violating 15 U.S.C. section 1692c(a)(2)) by alleging that Defendant Bank of America continued to communicate with Plaintiff directly, in an attempt to collect on the disputed loans, after being notified that Plaintiff was represented by an attorney.

### v.  Section 1788.17 (by violating 15 U.S.C. sections 1692e, 1692e(2), 1692e(10), 1692e(11), 1692f, 1692f(8))

The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692e by using "false, deceptive, or misleading representation or means in connection with the collection of the debt." (ECF No. 20 at 21).  The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692e(2) by using "false representations of the character, amount, or legal status of the debt."  *Id.*  The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692e(10) by using "false representations or deceptive means to collect or attempt to collect a debt or obtain information concerning Plaintiff."  *Id.* at 22.  The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692e(11) by failing "to inform Plaintiff in the initial communication that Defendant BofA was attempting to collect a debt and that any information obtained will be used for that purpose or that the communication was

from a debt collector." *Id.* The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692f by using "unfair or unconscionable means to collect or attempt to collect a debt." *Id.* The FAC alleges that Defendant Bank of America violated 15 U.S.C. section 1692f(8) by communicating "personal credit information, which it knew or should have known to be false, including its failure to communicate that a debt was disputed." *Id.* at 22.

These alleged violations consist of nothing more than "labels and conclusions" and "formulaic recitation[s] of the elements of [ ] cause[s] of action." *Twombly*, 550 U.S. at 555. They are unsupported by factual allegations. The Court concludes that the FAC lacks "sufficient factual matter" to support the conclusions that Defendant Bank of America violated these various provisions of the Federal Fair Debt Collection Practices Act. *Iqbal*, 556 U.S. at 678.

### vi. Conclusion

Defendants' motion to dismiss Plaintiff's second claim for violations of the RFDCPA is granted as to alleged violations of sections 1788.14(b) and 1788.12 and 1788.17 (by violating 15 U.S.C. sections 1692e, 1692e(2), 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692f(8)). Defendants' motion to dismiss is denied as to alleged violations of section 1788.14(c) and section 1788.17 (by violating 15 U.S.C. sections 1692c, subsections (a)(2) and (b)).

## V.   Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 21) is GRANTED in part and DENIED in part as follows.

1. The Motion to Dismiss Plaintiff's first claim for violation of TILA is DENIED.

2. Plaintiff's second claim for violations of the RFDCPA is DISMISSED as to alleged violation of sections 1788.14(b) and 1788.12 and section 1788.17 (by violating 15 U.S.C. sections 1692e, 1692e(2), 1692e(10),

1692e(11), 1692f, 1692f(1), and 1692f(8)).   The Motion to Dismiss Plaintiff's second claim is DENIED as to alleged violations of section 1788.14(c) and section 1788.17 (by violating 15 U.S.C. sections 1692c, subsections (a)(2) and (b)).

3.  Plaintiff's third claim for violations of RESPA is DISMISSED as to alleged violations of 12 U.S.C. section 2605, subsections (e)(2)(A) and (e)(3), and as to an alleged violation of 12 U.S.C. section 2605(e)(2) for Defendant Bank of America's alleged refusal to cease its collection activities.  The Motion to Dismiss Plaintiff's third claim is DENIED as to alleged violations of 12 U.S.C. section 2605, subsections (e)(1)(A) and (e)(2)(C).

DATED:  February 4, 2015

**WILLIAM Q. HAYES**
United States District Judge